```
 1                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   J.S. AND M.S., AS PARENTS AND   ) Docket No. 18 CV 181
     FRIENDS OF A.S.,                )
 4                                   )
           Plaintiffs,               )
 5                                   ) Chicago, Illinois
                  vs.                ) January 12, 2018
 6                                   ) 11:00 o'clock a.m.
     BOARD OF EDUCATION FOR          )
 7   SCHAUMBURG SCHOOL DISTRICT #54, )
     AND THE STATE OF ILLINOIS,      )
 8                                   )
           Defendants.               )
 9

10             TRANSCRIPT OF PROCEEDINGS - Motion
            BEFORE THE HONORABLE JOHN ROBERT BLAKEY
11

12   APPEARANCES:
     For the Plaintiffs:      ATTORNEY AT LAW
13                            BY:  MR. STEVEN E. GLINK
                              3338 Commercial Avenue
14                            Northbrook, Illinois  60062

15
     For Defendant Board:     FRANCZEK RADELET PC
16                            BY:  MS. DARCY L. KRIHA
                              300 South Wacker Drive
17                            Suite 3400
                              Chicago, Illinois  60606
18

19   For Defendant State:     ILLINOIS ATTORNEY GENERAL'S OFFICE
                              BY:  MR. THOMAS A. IOPPOLO
20                            100 West Randolph Street
                              13th Floor
21                            Chicago, Illinois  60601

22

23
                   Laura LaCien, CSR, RMR, CRR
24                    Official Court Reporter
              219 South Dearborn Street, Suite 1902
25                   Chicago, Illinois  60604
                          (312) 408-5032
```

```
 1            (The following proceedings were had in open court:)
 2                 COURTROOM DEPUTY:  18 C 181, A.S., et al., versus
 3   Board of Education for Schaumburg School District Number 54.
 4                 MS. KRIHA:  Good morning, Judge Blakey.  My name is
 5   Darcy Kriha.  I'm the attorney for the Board of Education of
 6   Schaumburg 54.
 7                 MR. IOPPOLO:  Good morning, your Honor.  Thomas
 8   Ioppolo on behalf of the State of Illinois, defendant.
 9                 MR. GLINK:  Good morning, your Honor. Steven Glink,
10   G-l-i-n-k, on behalf of the plaintiffs who are present in
11   court.
12                 THE COURT:  Good morning, counsel.  Happy new year.
13                 MR. GLINK:  Thank you.  You too, your Honor.
14                 MS. KRIHA:  Thank you.
15                 MR. IOPPOLO:  Thank you.
16                 THE COURT:  I saw the response that was, I believe,
17   filed moments ago from the School Board.  What's the position
18   currently from the State of Illinois?
19                 MR. IOPPOLO:  I just haven't had a chance to read
20   this my -- we are not going to -- we're not going to oppose
21   if the girl can be accommodated in the normal process of the
22   school day with the school nurse and they're skilled at hand
23   at administering medications, that's perfectly acceptable to
24   us, Judge.
25                 THE COURT:  All right.  But the relief sought is
```

1  immunization from any criminal or civil prosecution and I'm
2  trying to figure out what my legal authority is for that, as
3  well intended as that is.  I think one thing we can say is
4  everyone stands on the same ground in terms of our common
5  ground for her being healthy and learning; and I commend the
6  school for trying to accommodate as best they can.  But it's
7  fairly clear from the state statute, which the Attorney
8  General I believe has to enforce, that it's not permitted on
9  school grounds now.
10         Obviously, this is a court of law as it is rather
11 than how it should be or how it might be in the future.
12         MR. IOPPOLO:  I don't know --
13         THE COURT:  So what's the authority for me telling
14 the -- this is in Cook County, not DuPage, correct?
15         MS. KRIHA:  That is correct.
16         MR. GLINK:  Yes, your Honor.
17         THE COURT:  All right.  So what's the authority for
18 me telling Kim Foxx or John Lausch or General Sessions not
19 to -- now obviously all of those prosecutions are
20 hypothetical in the extreme.  Let's deal with realities
21 rather than absurdities.  But what's the legal basis, even if
22 it's agreed, for me issuing an order telling them to do or
23 not to do something?
24         MR. IOPPOLO:  You know, I would say this, the
25 statute is susceptible to interpretation and construction

1  that it would not necessarily cover a situation where there
2  is a medical authorization for this that it has to be -- it
3  cannot ever happen within the confines of the school nurse's
4  office or in the school administrator's office.  The statute
5  is clear that somebody cannot be smoking marijuana in a
6  school bus with other --
7        THE COURT:  Well, no one is saying that she wants to
8  fire up a bong in math class.  I mean, that's not --
9        MR. IOPPOLO:  Pardon me?
10       THE COURT:  No one is saying she wants to fire up a
11 bong in math class.  What we're trying to --
12       MR. IOPPOLO:  Exactly.  This situation when you read
13 the whole statute and the whole point of it is to facilitate
14 someone's medical needs, I don't know that -- and the other
15 point I was going to make is -- and you already made it --
16 it's highly speculative that there would be a prosecution in
17 this case.  It's virtually inconceivable I would think.
18       THE COURT:  Well, under the Rohrabacher-Farr
19 Amendments, which currently I believe are still in effect,
20 it's -- and this has nothing to do with General Sessions'
21 recent statements which again I don't even think would apply
22 here, the federal government is prohibited from expending
23 funds to interfere with state efforts to experiment with
24 medical marijuana.
25       So to the degree you're asking me to enforce that

| | |
|---|---|
| 1 | law, that law already exists so I'm trying to figure out |
| 2 | where the case for controversy would be for me under Article |
| 3 | III so I don't know that you need an order of immunity from |
| 4 | the federal government because they're not -- they're not |
| 5 | coming. |
| 6 | And if the Attorney General of Illinois is telling |
| 7 | me that it's consistent with Illinois law, I'd love to see |
| 8 | that interpretation.  And if the parties can work out an |
| 9 | agreed order that would satisfy the Attorney General that |
| 10 | they're complying with Illinois law and if the parties want |
| 11 | to have some clarity for the benefit of the parents and the |
| 12 | child and the School Board, I'm happy to look at whatever you |
| 13 | might want to propose. |
| 14 | And obviously, counsel, I know you -- I'm not asking |
| 15 | you to -- it's not a pop quiz.  I'm not asking you to |
| 16 | formulate complete ideas on the fly.  There's no school on |
| 17 | Monday, right? |
| 18 | MS. KRIHA:  That is correct. |
| 19 | THE COURT:  All right.  So we do have some time; is |
| 20 | that fair to say? |
| 21 | MR. GLINK:  Yes, Judge. |
| 22 | THE COURT:  Do you want -- does the Attorney General |
| 23 | want to file a written response? |
| 24 | MR. IOPPOLO:  We can; yes. |
| 25 | THE COURT:  Well -- |

1     MR. IOPPOLO: Yes. I think we should. I mean, I
2 don't think that you need -- we need to enjoin anybody today
3 if the situation is such that there's no need to do that
4 and --
5     THE COURT: Well, there's no school until Tuesday
6 anyway so I think -- I'm happy to commence and continue this
7 to Tuesday at 2:30 if that's agreeable to the parties. And
8 if you're able to work out an agreed order, you don't need to
9 file a response if you want to argue orally, counsel, but if
10 the parties want to submit a proposed order to my Proposed
11 Order In Box, I'm happy to look at what you're -- whatever
12 you're going to submit.
13     The issues that I'm concerned about, one is Article
14 III, case for controversy. There has to actually be a
15 controversy for me to rule. And even if the parties are
16 agreeing to some provision, I need to have legal authority to
17 do so. I don't think you need immunity from the federal
18 government under the current circumstance and if the Attorney
19 General is taking the position that this plan would not
20 violate state law, then you might be okay too but maybe the
21 clarity -- a clearer statement from them would be all that
22 you might need. I don't know if --
23     MS. KRIHA: Yeah.
24     THE COURT: It depends. So I started talking
25 without letting you talk first. Go ahead.

1           MS. KRIHA:  Oh, gosh.  No, Judge.  You've got it
2    exactly right.  I agree with Mr. Ioppolo.  The Illinois
3    statute strictly prohibits the possession or use of cannabis,
4    right, in all forms on school buses and on school grounds.
5           The problem is that even though we can all probably
6    agree in this courtroom that school personnel would not be
7    subject to arrest or being charged, the fact of the matter
8    is, is that the Illinois statute does contain exceptions and
9    this is not one of them.
10          So just as a matter of statutory construction, I
11   think the -- that's the District's concern.  We are ready,
12   willing, and able to serve this student and we will possess
13   and administer the medical care -- the medical cannabis
14   without issue.
15          THE COURT:  Maybe something short of a restraining
16   order might also resolve the matter for the parties.  The
17   Attorney General often issues letters regarding
18   interpretation of law.  Is that fair to say?
19          MR. IOPPOLO:  Yes.
20          THE COURT:  And if there was such a determination,
21   then there wouldn't be a dispute really for me in light of
22   the current state of federal law and the Attorney General's
23   interpretation of state law.  I mean, the concern is to have
24   the free and appropriate public education and I reviewed the
25   IEP and I would prefer a placement in obviously the least

1   restrictive environment which would be --
2           MS. KRIHA:  Yes.
3           THE COURT:  -- at the school.  So if that's
4   something the parties are able to work out consistent with
5   Illinois law, consistent with federal law or at least not
6   inconsistent such that someone would be prosecuted
7   criminally, then I'm happy to help give the parties an
8   opportunity to settle that matter.
9           Do the parties want time between now and Tuesday to
10  try to work through some of those issues?  And then if you
11  need to do any supplemental briefing or whatever and submit
12  whatever you want, do you think that's enough time?
13  Obviously, school starts on Tuesday.  She might miss a day.
14  What are your thoughts, counsel?
15          MR. GLINK:  Well, Judge, my thought -- first, with
16  regard to the concerns you have about the case and the
17  controversy, I think we have to look at this in two levels.
18  The first level is whether or not my client is going to be
19  allowed on school property with her patch and whether or not,
20  if the need arises, will she be allowed to ingest her or
21  apply her medical marijuana.  The second issue is the
22  immunization or order restraining prosecution.
23          As to the first issue, I would like the Court to
24  issue an order today saying that she can at least temporarily
25  start school first thing on Monday.  I think her education is

1  so important --
2         THE COURT:  There's no school on Monday, right?
3         MR. GLINK:  I'm sorry.  Tuesday, I meant.  Not wait
4  until the attorneys have time to brief or try and reach an
5  agreed order because even though Monday is somewhat of a free
6  day because it is a court holiday, I don't know if we'll be
7  able to accomplish all that in such a short time because, you
8  know, it's just -- we have half a day today.  I certainly
9  work weekends.  I don't know about my colleagues here but I
10 don't want to force anybody into an untenable position but --
11 and then Monday, we do have the day but sometimes these
12 things can't be resolved so easily.  There's politics
13 involved so --
14        THE COURT:  I understand that concern.  I can't
15 issue any order without lawful authority.  So until the
16 parties have defined for me exactly what that is, what that
17 authority is and what the actual case in controversy is here,
18 the law doesn't permit me to issue an order simply because
19 it's convenient.  I have to -- I have to have a basis for it
20 and I have to -- and if the parties are able to work through
21 something, that's something I have an obligation to go
22 through as well.
23        If the harm would be her missing one day of school
24 so the parties can deal with this very important issue -- not
25 just for the plaintiff but for other people as well -- I

1 think that's appropriate.  Don't you?
2       MR. GLINK:  I do, Judge.  But I also think that, you
3 know, under the standards for a temporary restraining order,
4 all we have to do is raise a fair question about the legality
5 of the statute either on its face or as applied to her.  I
6 don't think there's a dispute that we've at least raised the
7 fair question and raising the fair question entitles the
8 Court --
9       THE COURT:  And under the federal temporary
10 restraining order, that is not the Court's analysis.
11 There's -- that is not the analysis I have to apply.
12       MR. GLINK:  Okay.
13       MS. KRIHA:  Judge Blakey, can I --
14       THE COURT:  I mean, take a look at the rule.
15 There's -- the Seventh Circuit is very clear as to what the
16 standard is.  I have to -- there has to be likelihood of
17 success on the merits, no adequate remedy at law, and the
18 suffering of irreparable harm.  And if you can show that,
19 then I have to balance and consider the irreparable harm
20 possibly to non-moving party and then also consider the
21 public interests and I would have to do that under both state
22 and federal law so it's not as simple as you presented it at
23 all, counsel.  Okay.  Yes?
24       MS. KRIHA:  One of your comments, Judge Blakey, gave
25 me a thought.  If Mr. Ioppolo could before Tuesday morning

```
 1   issue just a short letter or guidance or an opinion -- again,
 2   I'm asking a lot -- if he could issue something in writing to
 3   me that -- to the District that would just simply reassure us
 4   for the time being until this matter -- until some point in
 5   time until it's resolved or we reach -- otherwise reach an
 6   agreement, that the student can -- that the School District
 7   can possess and administer the medical cannabis to the
 8   student in question without fear of any sort of, you know,
 9   arrest or charges being brought, then the District would be
10   perfectly comfortable, I can submit right here, that she can
11   come to school on Tuesday morning as long as I've got
12   something in writing from the state.
13           MR. IOPPOLO:  I have no problem saying right now
14   Tuesday is fine.  She doesn't need to miss school on Tuesday.
15           THE COURT:  Okay.  He just said that in open court
16   which is better than a letter so how about --
17           MS. KRIHA:  I was going to say, I will take it;
18   yes.
19           THE COURT:  All right.
20           MS. KRIHA:  Do we have to extend it?  Can it be the
21   entire week or do you want more time, Tom?
22           THE COURT:  If that's the case, then I would be
23   willing to move the hearing from Tuesday to a date convenient
24   to the parties.
25           MR. IOPPOLO:  Yeah.  You know, can I let you know?
```

```
 1  I actually have a family member having a medical procedure
 2  Monday so that's what I'm going to be tied up doing on Monday
 3  so I'll have to get some colleagues involved.
 4              THE COURT:  If that satisfies the School District --
 5              MS. KRIHA:  It does.
 6              THE COURT:  -- and obviously you're smiling --
 7              MR. GLINK:  I am.
 8              THE COURT:  -- then what date would you want because
 9  I'll defer to the parties then.  If he's representing in open
10  court that --
11              MR. IOPPOLO:  If would could come back in a week.  I
12  mean, if the School District is ready with their nurses and
13  the medication is ready, why can't we just --
14              MS. KRIHA:  We are.
15              MR. IOPPOLO:  -- just continue this for a week
16  and --
17              THE COURT:  All right.  Okay.  Gloria, give us a
18  date about a week out.  We're going to enter and continue the
19  motion for temporary restraining order.
20              COURTROOM DEPUTY:  We can do Thursday, January 18th
21  at 3:00 p.m.
22              MR. GLINK:  3:00 p.m.?
23              THE COURT:  Is that good for the parties?
24              MS. KRIHA:  It works.  Yes.  Thank you.
25              MR. IOPPOLO:  All right, Judge.  Thank you.
```

1      THE COURT:  All right.  Anything else the Court
2 needs to address today?
3      MR. GLINK:  No, your Honor.  We're very much
4 appreciative that you gave us the emergency time today.
5      THE COURT:  Oh, of course.  And I just want to
6 express the Court's concern.  Obviously having a child who is
7 not healthy and sick is probably one of the most agonizing
8 things so my heart goes out to you.  And I commend the School
9 District and the Attorney General for being very reasonable
10 and accommodating both as to medical needs and to educational
11 needs so I will see you on the next court date.  The Court
12 stands in recess.
13      MR. GLINK:  Thank you, your Honor.
14      MS. KRIHA:  Thank you, Judge.
15    (Which concluded the proceedings in the above-entitled
16 matter.)
17                    C E R T I F I C A T E
18      I hereby certify that the foregoing is a transcript
19 of proceedings before the Honorable John Robert Blakey on
20 January 12, 2018.
21
22 */s/Laura LaCien*
   _____                January 12, 2018
23 Laura LaCien                                    Date
   Official Court Reporter
24
25